**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**5:10-cv-177-RLV**
**(5:05-cr-202-RLV-1)**

| | |
|---|---|
| MONROE HERRING, | ) |
| | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| | )     **ORDER** |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or

Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), on the Government's Response to

Petitioner's Motion to Vacate, (Doc. No. 16), and on Petitioner's Reply, (Doc. No. 19).

## I.  BACKGROUND

1.  Offense Conduct

In 2004, Lieutenant David Ramsey, a detective lieutenant with the Iredell County

sheriff's office and a federal task force officer, began an investigation into drug dealing activities

in the Statesville area.  As part of this investigation, agents arrested, charged, and interviewed

Robert Dean, a local drug dealer.  During an interview with law enforcement, and as set forth in

the offense conduct section of the Pre-Sentence Report ("PSR"), Dean implicated Monroe

Herring ("Petitioner") in a drug conspiracy.  Dean told investigators that he had supplied

Petitioner with approximately 5 kilograms of crack cocaine and 20 to 30 kilograms of powder

cocaine between 2001 and January 2004. On December 8-9, 2004, agents planned and executed

an undercover drug buy between Dean and Petitioner, during which Petitioner intended to

purchase a half-kilogram of cocaine from Dean. The phone call setting up the transaction and

the subsequent in-person transaction were recorded. During the phone call and the in-person

transaction, Petitioner and Dean discussed their drug dealing past, including estimated quantities

of drugs they had dealt together. Before the December 9 drug transaction events could be

entirely concluded, agents arrested Petitioner.

     2. Pre-trial Process

     Petitioner was indicted by the Grand Jury sitting in the Western District of North

Carolina on May 24, 2005, and charged with conspiracy to possess with intent to distribute

cocaine and cocaine base, in violation of 21 U.S.C. § 846. See (Case No. 5:05cr202, Doc. No. 3:

Sealed Indictment). The indictment alleged that this offense occurred between January 2001 and

December 9, 2004, and involved at least 50 grams of cocaine base and at least 5 kilograms of

cocaine. (Id.). The Government filed a notice pursuant to 21 U.S.C. § 851, noticing Petitioner's

prior felony drug conviction, which increased the statutory minimum penalty from ten years of

imprisonment to twenty years. Attorney Julia Mimms ("Attorney Mimms") was appointed to

represent Petitioner during the course of his criminal proceeding. See (Id., Doc. No. 6).

     Petitioner's case was continued several times and was eventually scheduled for trial

March 6, 2006. See (Id., Doc. No. 21). On February 27, 2006, Petitioner, through Attorney

Mimms, filed a motion to suppress, asking the Court to suppress all evidence related to the

December 8-9 undercover drug buy, arguing that evidence related to this buy was irrelevant and

unfairly prejudicial, because Petitioner interacted only with a government informant and an

undercover law enforcement officer during the buy and, therefore, could not have conspired with

them.  (Id., Doc. No. 22 at 1-4).  The next day, this Court issued a written order stating that the motion would be heard prior to the start of trial on March 6, 2006.  (Id., Doc. No. 23).

3. Guilty Plea

Petitioner did not proceed to trial and instead pled guilty without the benefit of a plea agreement on March 3, 2006.  At the Rule 11 hearing, the magistrate judge advised Petitioner that the conspiracy charge to which he was pleading guilty was alleged to have spanned from 2001 to December 2004 and that the charge carried a mandatory minimum sentence of twenty years in prison.  See (Id., Doc. No. 32 at 3-4: Rule 11 Hrg. Tr.).  When informed of the penalty, Petitioner asked a question of his attorney, then responded "[y]es, sir," to the magistrate judge's question whether he understood that penalty.  (Id.; see also id., Doc. No. 29 at ¶ 9).  The magistrate judge continued with the customary Rule 11 questioning, and Petitioner admitted that he was, in fact, guilty of the conspiracy charge.  See (Id., Doc. No. 32 at 4-7; Id., Doc. No. 29 at ¶ 21).  When asked whether there were any terms of the guilty plea to put on the record, Attorney Mimms responded that there were not but noted that Petitioner "may qualify for the safety valve" and that he would be "asking for that application at sentencing."  (Id., Doc. No. 32 at 7).  Counsel for the Government noted that the Government would challenge the timeliness of acceptance of responsibility and that it would not move for a downward departure pursuant to U.S.S.G. § 5K1.1.  (Id. at 8).  Petitioner additionally stated at the Rule 11 hearing that he had had enough time to discuss with Attorney Mimms any possible defenses to the charge and that he was satisfied with Attorney Mimms' services, specifically stating that he "kn[ew] she really worked hard trying to help [him] out."  (Id. at 10; see also id., Doc. No. 29 at ¶¶ 26-27).

4. First Pre-Sentence Report

The probation officer issued the initial pre-sentence report on May 22, 2006 ("first

PSR"). (See Doc. No. 4: Ex. B). In it, the probation officer recommended a reduction in offense

level for acceptance of responsibility and the applicability of the safety valve, setting Petitioner's

offense level at 33. (Id. at 6). With a criminal history category I and application of the safety

valve, Petitioner faced an advisory guideline range of 135 to 168 months. (Id. at 14). Neither

party filed objections to the first PSR.

     5. Motion to Withdraw Guilty Plea

     On June 27, 2006, more than three months after the entry and acceptance of his guilty

plea, Petitioner, through Attorney Mimms, filed a motion to withdraw his guilty plea, alleging

that that "there were factors unknown at the time he entered his plea of guilty which, if known,

would have affected his decision to enter said plea" and, therefore, his plea "was not knowingly

made." See (Case No. 5:05cr202, Doc. No. 30 at 1-2). Petitioner did not elaborate on the

previously unknown factors in the written motion.

     This Court held a hearing on the motion to withdraw on August 28, 2006. At the hearing,

Attorney Mimms stated that Petitioner only ever intended to plead guilty to the drug transaction

occurring on December 9, 2004, but when Attorney Mimms learned that the December 9

transaction involved only a government informant and an undercover law enforcement officer,

she determined that the "conspiracy" alleged to have occurred on that date could not have been a

conspiracy in the first place. See (Id., Doc. No. 35 at 2-3: Hrg. on Mot. to Withdraw Guilty Plea

Tr. (hereafter "Mot. to Withdraw Tr."). Although Attorney Mimms also had argued in the

motion to suppress (filed February 27, 2006) that the December 9 transaction involved only a

government informant and an undercover law enforcement officer, Attorney Mimms stated at the

hearing on the motion to withdraw the guilty plea that she had not learned of this fact ("that the

only other two people involved in the December 8th and 9th transaction were government

agents") until after she received the first PSR on May 30, 2006. <u>See</u> (<u>Id.</u> at 3). Attorney Mimms then stated that if Petitioner was allowed to withdraw his guilty plea and proceed to trial, he would file a motion to suppress the evidence from the December 9 transaction on the basis that it involved only individuals working for or on behalf of the Government. (<u>Id.</u>).

The Government presented evidence supporting the factual basis for the plea.[1] As part of the evidence, Lieutenant Ramsey testified that he began a federal investigation into cocaine trafficking in the Iredell County area, and this investigation led him to an individual named Robert Dean. (<u>Id.</u> at 7). Lieutenant Ramsey arrested Dean in January 2004 and interviewed him on December 8, 2004. (<u>Id.</u> at 7; 13). During the interview, Dean stated he had been supplying cocaine to Petitioner (whom he knew as "Money") on a regular basis from 2001 until January 2004. (<u>Id.</u>). Dean estimated for Lieutenant Ramsey that he had sold Petitioner between 20 to 30 kilograms of powder cocaine and 5 kilograms of crack cocaine during this time. (<u>Id.</u> at 8). Ramsey then had Dean arrange a drug buy with Petitioner. (<u>Id.</u> at 9). Dean was, of course, working as a government informant on December 8-9, 2004, but he had not been working as an informant when he sold the cocaine to Petitioner between 2001 and January 2004. (<u>Id.</u> at 8-9).

On the recorded phone call setting up the drug transaction, Petitioner described his involvement in the drug business, including with someone he referred to as "a white boy." (<u>Id.</u>). Petitioner further stated on the recorded phone call that "he had been helping everybody that hollered at him and that he had been working hard," statements which Ramsey interpreted as Petitioner admitting he had been "distributing drugs." (<u>Id.</u> at 10). Petitioner then told Dean that

---

[1] Before presenting this evidence, counsel for the Government noted for the Court that Attorney Mimms had never provided any explanation as to the basis of the motion to withdraw the guilty plea. <u>See</u> (<u>Id.</u> at 5) ("Your Honor, what makes it so challenging in dealing with a hearing like this with Ms. Mimms, she never calls me. She never gives me any explanation.").

he "needed nine ounces," that "white boy would be ready as soon as he got them," and that he also was involved with a third person, who Lieutenant Ramsey understood was a Mexican drug supplier. (Id.) Petitioner stated that he had "hard and soft customers," (meaning powder and crack cocaine) but that Petitioner preferred "to get it all soft." (Id. at 10-11). Dean then asked Petitioner how much he had "moved" for him already, and Petitioner replied, "[a] lot of it, man." (Id. at 10). Petitioner, through Attorney Mimms, cross-examined Lieutenant Ramsey on the clarity of the recording of the phone call and on the fact that the participants in the December 8-9 drug transaction were Government agents. (Id. at 13-14).

Following Lieutenant Ramsey's testimony, Attorney Mimms argued that her client only accepted responsibility for the December 8-9 transaction and, because that transaction involved only Government agents, it was not actually a conspiracy. (Id. at 15). Attorney Mimms explained that Petitioner "pled guilty to the conspiracy as a whole with the intent to challenge the drug amount and the drug type at sentencing," and that he would have admitted responsibility only for the nine-ounce deal occurring at the December 8-9 undercover buy. (Id.). Attorney Mimms stated that Petitioner would not admit to participating in a conspiracy that spanned back to 2001 based solely on "a convicted drug dealer's word." (Id. at 16). Attorney Mimms continued that Petitioner never intended to admit guilt to the conspiracy pre-dating the December 8-9 drug transaction. (Id. at 17). Counsel for the Government pointed out that Attorney Mimms did not add any restrictions to Petitioner's guilty plea at the Rule 11 hearing. (Id. at 19).

Attorney Mimms concluded by arguing that Petitioner's plea was not knowing or voluntary because he thought he would be pleading to only the December 8-9 transaction and only learned later that this transaction could not have supported a conspiracy charge. (Id. at 22). Attorney Mimms also argued that Petitioner "absolutely asserts his innocence as to any and

everything in that indictment prior to December 8th and 9th." (Id.). The Government re-called Lieutenant Ramsey to testify to other admissions Petitioner made on the recordings. (Id. at 26). Lieutenant Ramsey testified that at the December 9 drug buy, Petitioner told Dean, "Come on, let me go to work, boy," which Ramsey interpreted as Petitioner selling drugs for Dean. (Id.). Petitioner also described for Dean how he had obtained drugs since Dean stopped supplying him, stating that he had been helping "the boy" sell two to three kilograms of cocaine and that Petitioner had previously received and sold about five kilograms of cocaine from "some man," facts that put Petitioner's foreseeable drug amount at more than five kilograms of cocaine. (Id. at 28-29).

Attorney Mimms re-argued Petitioner's position at the end of Lieutenant Ramsey's additional testimony, again stating that Petitioner "pled guilty because he was accepting responsibility for a short period of time in the dates . . . on the indictment and for a small portion of cocaine that was included in the total drug amount on that indictment . . . that which came from the discussions on December 8th and the actual transaction on December 9th." (Id. at 32). Attorney Mimms continued that "the main thrust" of Petitioner's argument was "that the December 8th and 9th dates is what he was accepting responsibility for when he pled guilty." (Id.).

After hearing the evidence and arguments from counsel, this Court denied Petitioner's motion to withdraw the guilty plea. (Id. at 32-33). This Court found that Petitioner had not offered credible evidence that his plea was unknowing and involuntary, nor had Petitioner credibly asserted his legal innocence. (Id. at 33).

6. The Government's Objections to the PSR

The day after the hearing on the motion to withdraw guilty plea, the Government lodged

two objections to the first PSR.  See (Doc. Nos. 16-1; 16-2).  Specifically, the Government

objected to application of the safety valve because "Defendant, through counsel, having moved

to withdraw his guilty plea and having denied his involvement in the drug conspiracy with which

he was charged, should not receive the benefits of the Safety Valve, U.S.S.G. § 5C1.2."  See

(Doc. No. 16-1 at 1).  The Government further requested that some of the paragraphs be

amended to reflect that the safety valve did not apply "because Defendant has not been

forthcoming."  (Id.).  The Government additionally objected to awarding Petitioner a reduction

for acceptance of responsibility "in light of Defendant's motion [to withdraw his guilty plea]."

See (Id. at 2).

       7. Revised PSR

      On September 5, 2006, the probation officer issued a revised PSR after the Court's denial

of the motion to withdraw the guilty plea.[2]  See (Case No. 5:10cv177, Doc. No. 5: Pet. Ex. C).

The revised PSR provided details on Petitioner's motion to withdraw guilty plea and removed

any reduction in offense level for acceptance of responsibility or the safety valve.  See (Id. at ¶¶

7; 16; 19) ("Due to his attempted withdrawal of his guilty plea, the defendant failed to meet

subdivision (5) of § 5C1.2.").  Petitioner's guideline range increased from 135 to 168 months to

240 to 293 months.  (Id. at ¶ 66).  Petitioner, through counsel, objected to the drug amount

contained in the revised PSR, specifically disputing the attribution of 5 kilograms of crack

cocaine and 20.999 kilograms of powder cocaine to Petitioner.  See (Id., Doc. No. 3-5 at ¶ 2: Pet.

Ex. E).  Petitioner also objected to the denial of a reduction in offense level for acceptance of

responsibility, denial of the safety valve, and some of the criminal convictions attributed to him.

---

[2]  In a second revised PSR issued September 20, 2006, the probation officer clarified that denial
of acceptance of responsibility was based on Petitioner's dispute of statements made by Dean,
rather than disputing the December 8-9 transaction.  See (Doc. No. 6: Pet. Ex. D).

(Id. at ¶¶ 3-5).  The probation officer issued an addendum to the revised PSR on October 19, 2006, responding to Petitioner's objections as to his role in the offense, drug amount, and acceptance of responsibility, and recommending no change to the PSR.   See (Id., Doc. No. 3-6: Pet. Ex. F).

8. Attempted Disclosures in Satisfaction of Safety Valve

Prior to the sentencing hearing, Petitioner, through counsel, submitted a written disclosure to the probation officer and to the Government discussing his involvement in the December 8-9 drug transaction, stating that he understands that he is "guilty of being in a drug conspiracy for more than just December of 2004," and acknowledging that he "did drug deals before then like the indictment says."  See (Id., Doc. Nos. 3-7; 3-8: Pet. Exs. G; H).  Petitioner submitted a second disclosure statement (undated) in which he attempted to provide more details of his drug dealing.  See (Id., Doc. No. 3-9: Ex. I).

9. The First Sentencing Hearing

This Court convened what would be the first of two sentencing hearings on February 20, 2007.  At the start of the hearing, the Court asked Petitioner whether he was pleading guilty to the conspiracy count and whether he understood that charge and the possible penalties, and Petitioner responded, "[y]es, sir," to both inquiries.   (Case No. 5:05cr202, Doc. No. 40 at 2: Tr. of Sent. Hrg. (hereafter "Tr. of 2/20/07 Sent. Hrg.").  Petitioner also stated that he committed that offense, and he stipulated to a factual basis supporting the guilty plea.  (Id. at 2-3).  Petitioner then raised three objections to the pre-sentence report: (1) that the safety valve should apply; (2) that he should receive a reduction in offense level for acceptance of responsibility; and (3) that the drug amount should be "amended to more accurately depict his criminal conduct" in the charged conspiracy.  (Id. at 4).  Regarding the safety valve, Petitioner, through Attorney Mimms,

submitted that the Government had declined to meet with Petitioner for an interview concerning his knowledge of criminal activity and that Petitioner had submitted a written "disclosure statement" to the probation officer to satisfy the fifth criterion of the safety valve. (Id. at 5-6; 49).

As to acceptance of responsibility, Attorney Mimms argued Petitioner should not lose the two-level reduction for acceptance of responsibility as a result of his motion to withdraw the guilty plea, because that motion was based on Attorney Mimms' misunderstanding of the evidence against him. (Id. at 7-8). As Attorney Mimms explained, she received four sets of disks of discovery in the mail, two of which were marked "AUSA's copy" and two of which were marked "defendant's copy." Attorney Mimms contacted Lieutenant Ramsey to inquire about the four disks, and he informed her that they were duplicates and that he mistakenly included two of the disks in the envelope to her. (Id. at 8). Attorney Mimms listened to two of the disks but found them too "staticky" to understand what was being said, and she mistakenly believed that the conspiracy count was based only on the December 8-9 undercover transaction. (Id.). Thus, Attorney Mimms continued, Petitioner filed the motion to withdraw the guilty plea to challenge the legal concept that Defendant could not have conspired with the two Government agents on December 8-9. (Id. at 9). Attorney Mimms stated that approximately one week prior to the sentencing hearing, however, she listened to the second set of recordings and discovered that those recordings actually were clear, unlike the set she previously listened to. (Id. at 10-11; 48).

Attorney Mimms had Petitioner come to her office to listen to this previously unheard second set of recordings and thereafter accepted responsibility for "the whole span of time." (Id. at 11). Attorney Mimms then submitted a written disclosure to the probation officer on behalf of

Petitioner, hoping to demonstrate his acceptance of responsibility for the offense. (Id. at 10). Counsel for the Government countered Attorney Mimms' explanation of not having previously listened to the clear set of CDs, explaining that Attorney Mimms never told Government counsel there was a problem with any of the CDs. (Id. at 15). As the U.S. Attorney explained, "if she doesn't listen to the tapes, I don't know what I can say about it," and, further, "if I don't know that there are problems [with the quality of discovery disks], I can't deal with it." (Id. at 16).

The Government also countered Petitioner's request for acceptance of responsibility and application of the safety valve by calling Lieutenant Ramsey to testify to the "serious omissions" in Petitioner's disclosure statement. (Id. at 17). Lieutenant Ramsey testified, again, concerning the information that he learned from Dean about Petitioner, specifically, that Dean had been involved in the drug trade with Petitioner from 2001 to January 2004 and that Dean had supplied Petitioner with approximately 20 to 30 kilograms of cocaine during that three-year span. (Id. at 19-20). Dean told Ramsey that Petitioner was "a broker who knew a lot of people that would purchase the drugs from him." (Id. at 20). Ramsey then recounted again the recorded telephone call between Petitioner and Dean on December 8, 2004, during which they discussed their drug dealing history. (Id. at 21-24). Ramsey also recounted again the details of the pre-arranged drug transaction on December 9, in which Petitioner agreed to buy a half-kilogram of cocaine but, at the site of the actual transaction, wanted the entire kilogram the undercover agent brought with him. (Id. at 25-26). Ramsey also summarized the conversations between Dean and Petitioner at the drug buy, during which Petitioner stated that he and Dean had worked together for a "long time," and during which Petitioner did not dispute Dean's statement that Dean had provided him about 30 kilograms through the years. (Id. at 26). Ramsey also recounted Petitioner's statements during the recorded conversation that he had sold four to five kilograms for "the man" over a

previous month period.  (Id. at 25-26).

Lieutenant Ramsey testified to the inadequacies in Petitioner's disclosure statement.  (Id. at 29).  Ramsey testified that Petitioner never identified "the Mexican," the "white boy," or "the man who provided the truck," all of whom Petitioner described on the recordings as partners in his drug trade.  (Id. at 29-30; 32).  Nor did the disclosure statement identify anyone else with whom Petitioner had been dealing, the locations of any transactions, or the dates of any transactions.  (Id. at 30; 46).  On cross-examination, Ramsey testified that he interviewed Petitioner on the day of his arrest and that Petitioner had not named these individuals during that interview, either, because he did not know their names.  (Id. at 33-34).  Nor had Petitioner named those individuals in the recorded conversation; he simply referred to them as "a Mexican and a white boy," as he did during his post-arrest interview.  (Id. at 42).

This Court found that the recorded phone calls included significant evidence of the scope of the conspiracy alleged in the indictment and concluded that the offense of conviction included Petitioner's involvement with others mentioned on the recordings, including the Mexican, the white guy, and others buying and selling to and from Petitioner.  (Id. at 52).  The Court noted that Attorney Mimms had been unable to advise the defendant properly about his obligations under the disclosure prong of the safety valve until she listened to the clear set of recordings the week before the sentencing hearings and, therefore, allowed her and Petitioner additional time to satisfy the disclosure requirement.  (Id. at 53-55).

10. Additional Attempts to Satisfy Safety Valve

After the first sentencing hearing, Petitioner submitted a "supplemental disclosure statement" in which he attempted to provide additional details about his drug dealing.  See (Doc. No. 3-10: Pet. Ex. J).  The Government filed a written opposition to Petitioner's requests for

acceptance of responsibility and application of the safety valve.  See (Case No. 5:05cr202, Doc. No. 41).  As to acceptance of responsibility, the Government argued that Petitioner's attempt to withdraw his guilty plea, along with his objections to the drug amounts, demonstrated his lack of acceptance of responsibility.  (Id., Doc. No. 41 at 1-2).  As to the safety valve, the Government argued that Petitioner has never provided "a complete and truthful statement of all information in his possession concerning this offense."  (Id. at 2-3).  The Government stated further:

> For example, he has never provided both the first and last names of both his suppliers and customers.  He has never identified a list of his customers.  He has never provided a breakdown of "soft" and "hard" cocaine that he obtained and distributed. He has never provided drug quantities.  He has never said who cooked the crack cocaine or the method of cooking.  He has never given the locations of the customers, sellers and drug stashes.  He has never explained what became of the money he made.  He has provided no phone numbers, no address books, no financial records, no receipts and no vehicle identification numbers.  He has not indicated how he met "Poppy" or even in which county "Poppy" operated.  He has never explained from whom - - or how - - he obtained the white truck he was driving on December 9, 2004.  He has never given the names of "the boys who wanted to buy some" referenced in his original disclosure statement.  His disclosures are woefully incomplete.

(Id. at 2).

11. Second Sentencing Hearing

The Court re-convened the sentencing hearing on March 26, 2007.  At this second hearing, Attorney Mimms relayed the steps she and Petitioner had taken to provide further disclosure in an attempt to satisfy the requirements of the safety valve.  (Id., Doc. No. 50 at 2-3: Tr. of Sent. Hrg. 3/26/2007).  Attorney Mimms also explained, again, the confusion over the four disks provided in discovery and why she had not previously listened to two of the disks.  (Id. at 5-6).  Attorney Mimms sought to minimize the harm of filing the unsuccessful motion to withdraw the guilty plea, stating:

> [T]he bottom line is that if the clear CDs had been heard earlier in this case, that

> motion to withdraw the guilty plea would never have been made. It wouldn't
> have been drafted, filed or argued. And so, first of all, the motion to withdraw
> was not about the facts; it was about the legal concept of the definition of
> conspiracy. But even more importantly than that, it would never have even been
> filed if those CDs had been listened to earlier."

(Id. at 8). Attorney Mimms then, again, sought application of the safety valve and acceptance of

responsibility for Petitioner, arguing that he had provided all of the information he knew. See

(Id. at 10-13). The Government opposed those requests, citing Attorney Mimms' earlier

statements at the hearing on the motion to withdraw that Petitioner "never intended" to admit to

the conspiracy outside of the December 8-9 transaction. (Id. at 18). Lieutenant Ramsey was,

again, called to the stand to testify, and this time he described the discovery sent to Attorney

Mimms. (Id. at 20). Ramsey testified that there were three recordings from the December 8-9

transaction (one from a recorder inside the vehicle, one from a wire worn by Dean, and one from

the telephone call), and these recordings were mailed to Attorney Mimms. (Id. at 21). Ramsey

also relayed that the written reports he prepared in connection with the undercover buy were also

provided to Attorney Mimms in discovery.

Ramsey then again described Petitioner's role in the drug trade, referring to him as a

"mid-level" drug dealer brokering transactions and dealing "some pretty substantial weight."

(Id. at 23-24). Ramsey again identified inadequacies in Petitioner's disclosure statement,

including that he never identified the total quantity of drugs he dealt, whether he ever cooked

cocaine into crack, the counties in which he dealt drugs, identities of his sources once Dean went

to prison, or whether named individuals were sources or customers. (Id. at 25-26). Lieutenant

Ramsey testified that, based on his training and experience, he did not believe Petitioner had

provided "all the information known to him about the conspiracy and the relevant conduct," and,

moreover, that the information was "very incomplete" based on what Ramsey had learned

throughout the investigation. (Id. at 27). On cross-examination, Ramsey testified that the only steps taken in the investigation were the historical interview of Dean and the December 8-9 undercover buy. (Id. at 28-29).

In arguing for the safety valve after Ramsey's testimony, Attorney Mimms stated, again, that "[o]nce the clear CDs were heard, everything changed. Everything changed. The motion to withdraw the guilty plea was purposeless. It never would have been done. . . . And the defense has tried very hard to rectify the whole mess that was created because clear tapes had not been heard earlier." (Id. at 38). Notwithstanding Attorney Mimms' efforts, this Court found "by the preponderance of the evidence that [Petitioner] [did] not meet the criteria for safety valve or acceptance of responsibility." (Id. at 39). This Court found that Petitioner's disclosure information was "sketchy, sparse, and to date he has not made a clear acceptance of the offense conduct and the relevant conduct that would inspire confidence." (Id.). Without the safety valve, the statutory mandatory minimum sentence was twenty years' imprisonment. (Id.).

Defendant made a lengthy allocution, begging for application of the safety valve and explaining his inability to cooperate (Dean was "already locked up" and the others were "gone" by the time he got out of jail). (Id. at 40-51). In explaining its chosen sentence, this Court stated that it was "mindful that defendant is remorseful" and that he had "shown the ability to maintain a law-abiding life since he's been on bond and his attitude has changed," but the sentence to be imposed (240 months mandatory minimum based on Petitioner's prior conviction) was the lowest allowed by law. (Id. at 52). This Court imposed a 20-year sentence, issuing the judgment on March 28, 2007. (Id.; see also Doc. No. 42). Petitioner moved for reconsideration of the denial of the safety valve, but this Court denied the motion. See (Id., Doc. Nos. 44; 52).

12. Appeal

Petitioner timely filed a notice of appeal, and Attorney Mimms withdrew from further representation so that Petitioner could pursue an issue on appeal that may "give rise to a conflict as to further representation by her."  See (Fourth Circuit Case No. 07-4388, Doc. Nos. 24; 25).  With new appellate counsel, Petitioner raised two issues on appeal: denial of the safety valve and ineffective assistance of counsel by Attorney Mimms.  See (Fourth Circuit Case No. 07-4388, Doc. Nos. 34; 43).

In an unpublished opinion, the Fourth Circuit held that the denial of the safety valve was not erroneous and declined to consider the allegation of ineffective assistance of counsel on direct appeal.  See United States v. Herring, 329 F. Appx. 431, 433 (4th Cir. 2009) (unpublished).  The Fourth Circuit stated that Attorney Mimms' "admissions are troubling," but found that the record did not conclusively establish that she was ineffective.  (Id.).  In a footnote, the Fourth Circuit noted that Attorney Mimms "informed the court that she believes she provided ineffective assistance to Herring."[3]  Id. at n.*.

13. Petitioner's § 2255 Allegations

Petitioner subsequently filed petitions for rehearing and for certiorari to the Supreme Court, but both petitions were denied.  Petitioner timely filed the instant petition on November 16, 2010.  In his motion, Petitioner asserts that Attorney Mimms provided ineffective assistance to him in two ways.  See (Doc. No. 2 at ¶ 8).  Petitioner alleges that Attorney Mimms provided ineffective assistance, first, by failing to object to the drug amounts attributable to him, after she had assured him she would so and that his guilty plea would be limited only to the transaction occurring on December 8-9.  See (Doc. No. 3 at 12-13).  Petitioner additionally alleges that

---

[3]  Respondent states that the Government inquired of Attorney Mimms about this footnote, and Attorney Mimms relayed that she did not inform the Fourth Circuit that she believed she provided ineffective assistance.

Attorney Mimms provided ineffective assistance by failing to properly investigate his case, specifically, by failing to review all of the discovery provided to her by the Government. See (Id. at 12-19). He alleges that the failure to review the evidence led to the ill-fated motion to withdraw the guilty plea, which led to denial of acceptance of responsibility and the safety valve.

14. Attorney Mimms' Affidavits

Per the Government's request, Attorney Mimms provided an affidavit ("Affidavit") and a Supplemental Affidavit ("Supplemental Affidavit") responding to the allegations raised in Petitioner's motion. (Doc. Nos. 16-3; 16-4: Exs. 3; 4). In the Affidavit, Attorney Mimms recounted steps she took during the pre-trial phase of Petitioner's case. Specifically, Attorney Mimms described her receipt of four disks of discovery, her query of the case agent regarding the four disks, and his response that two of the disks were duplicates mistakenly mailed to her. (Doc. No. 16-3 at 2-3). Attorney Mimms also described a pre-trial preparation session with Petitioner, during which they reviewed the audio/video recording of the undercover drug buy and found the audio "unclear and indiscernible," which Attorney Mimms believed "undermined the extent and strength of the government's evidence against Defendant" and made "evidence of Defendant's involvement beyond [December 9, 2004] questionable." (Id. at 3). Attorney Mimms relayed that she also discussed the charge, penalty, and legal definition of conspiracy with Petitioner during this meeting. (Id.).

Attorney Mimms next described in her Affidavit the plea discussions she had with Petitioner, including the differences between pleading guilty with a plea agreement and pleading guilty "straight up" and the penalties mandated for the drug types and quantities contained in the Indictment. (Id.). Attorney Mimms stated that she also explained the "safety valve provision" with Petitioner, the five criteria for receiving the benefit of the safety valve, and the importance

17

of the fifth criteria to provide all information and evidence he had about the offense. (Id. at 4).

Attorney Mimms relayed that she "continued to reiterate the reality of [Petitioner's] circumstances and the potential consequences he faced from all angles of his case." (Id.).

Although Petitioner "remained indecisive" until the Friday before the Monday trial, he ultimately decided to plead guilty without a plea agreement. (Id.). Attorney Mimms believed Petitioner "understood that he would have to qualify for the safety valve in order to receive a sentence pursuant to the guidelines and below the statutory minimum," because the Government was not interested in Petitioner's cooperation. (Id.). Attorney Mimms emphasized in the affidavit that she "let Mr. Herring come to that decision on his own, without any assurances regarding limitations to his guilty plea, the ultimate drug types or quantities that would be attributed to him, or his sentence." (Id. at 5). During Petitioner's plea colloquy that afternoon, Attorney Mimms relayed that Petitioner "answered the court's questions without any instruction from [her,]" and that she "did not tell Mr. Herring how to respond to the judge's questions," as is her consistent practice. (Id.).

Attorney Mimms next detailed her receipt of the May 2006 PSR, which she reviewed with Petitioner. (Id. at 5-6). Attorney Mimms recounted in the Affidavit that Petitioner "was not comfortable" with the total offense level of 33 and that their discussion "returned to the issue of the drug transaction conducted on December 8 and 9, 2004, due to his struggle with the potential argument that it only involved government agents." (Id. at 5). Attorney Mimms relayed that she realized, for the first time on this date, that the transaction did not involve anyone else, because she learned that day that another individual who could be heard on the phone call setting up the transaction was unrelated to the transaction and was simply giving directions to Petitioner. (Id. at 5-6). Attorney Mimms recounted that Petitioner "reevaluated his decision to plead guilty and

18

requested to withdraw it." (Id. at 6).  Attorney Mimms states in the affidavit that she explained

to Petitioner that the court was unlikely to grant the motion to withdraw and that he risked losing

the benefit of the safety valve by moving to withdraw.  (Id.).

In the Affidavit, Attorney Mimms also addressed the PSR objections.  (Id. at 6-7).  She

explained that the probation officer told her to wait to submit objections until the court ruled on

the motion to withdraw guilty plea, which she did.  (Id. at 6).  Attorney Mimms related that she

received the Government's August 2006 PSR objection, in which it objected to the application of

the safety valve and acceptance of responsibility, that she responded to this objection on

September 1, 2006, and that she submitted a second objection to the drug quantity on October

11, 2006.  (Id.).

Attorney Mimms also described her preparation for the February 2007 sentencing

hearing, during which she inadvertently put what she believed were the "duplicate" disks into her

computer and realized that the audio on this disk was clear.  (Id. at 7).  Attorney Mimms relayed

that Petitioner came to her office the next day to listen to these clear disks, and at this time they

"realiz[ed] that the government's case was stronger than previously perceived and that arguments

for lower drug amounts were no longer plausible."  (Id.).  This realization caused her to "shift[]"

the defense strategy and focus instead on application of the safety valve.  (Id.).  Because the

Government was unwilling to interview Petitioner, Attorney Mimms "assisted [Petitioner] in

providing a written disclosure statement containing his knowledge of the conspiracy."  (Id.).

Attorney Mimms related that Petitioner "participated in drafting the statement during a telephone

conversation, and then it was faxed to him for him to read and approve before its submission."

(Id.).

Because the "core issue" at the sentencing hearings was whether Petitioner met the

disclosure prong of the safety valve provision, id., Attorney Mimms conferred with Petitioner "on several occasions regarding any other information he could provide to the government about the conspiracy" during the weeks between the two sentencing hearings, id. at 8. Attorney Mimms relayed that Petitioner "was able to recall some additional details," so she "assisted him with the preparation of a supplemental disclosure statement which [she] forwarded to the government." (Id.).

In the Supplemental Affidavit, Attorney Mimms explains that she did not contact counsel for the Government or the case agent about the inaudible recording because she was unaware that there was another, clearer recording. (Doc. No. 16-4 at 2). She explained that the visual recording was clear, but the conversation occurring at the December 9 undercover buy was not audible. (Id. at 2). Regarding Petitioner's decision to plead "straight-up" without a plea agreement, Attorney Mimms re-iterated that she advised Petitioner of all of his options, including pleading guilty with a plea agreement, pleading straight-up without a plea agreement, or proceeding to trial. (Id. at 2-3). Attorney Mimms emphasized that she "talked at length with him about the potential consequences of each" of these choices. (Id.). Attorney Mimms also stated that she did not tell Petitioner that his guilty plea was limited to the 9 ounces of cocaine he arranged to purchase on December 8-9, or to any other drug amount or time period. (Id. at 3). Instead, Attorney Mimms states, she explained to him that "if he pled guilty it would be to the conspiracy as a whole as charged in the indictment and that the judge at sentencing would determine the drug type and quantity attributable to him," and she also explained that pleading guilty "straight-up" subjected him to the statutory penalty of 20 years to life imprisonment. (Id. at 3-4). According to Attorney Mimms, "a guilty plea limited to the transaction of December 8-9 was not an option," and she "did not represent to [Petitioner] at any time whatsoever that his

guilty plea would be limited to the transaction of December 8-9 or to any particular drug quantity." (Id. at 4). Attorney Mimms explained her statements at the hearing on the motion to withdraw that Petitioner ever only intended to accept responsibility for the December 8-9 transaction that she was "simply conveying to the court that he intended to argue drug amounts at sentencing; that he intended to contest the allegations from before December 8-9" and that she "was not saying that his guilty plea was limited to only the activities of December 8-9." (Id.).

As to the plea colloquy, Attorney Mimms does not recall specifically what Petitioner asked her during the Rule 11 hearing, but she believes that he clarified the penalty and potential sentence as stated by the court and that she informed him they would have the opportunity to address drug quantity and penalty at sentencing. (Id. at 5). Attorney Mimms is certain, however, that she never told Petitioner before or during the Rule 11 hearing that his plea was limited to any particular drug amount. (Id.).

Attorney Mimms also clarified why Petitioner sought to withdraw his guilty plea. (Id. at 5-6). Attorney Mimms recounted in the Supplemental Affidavit that Petitioner "became unsettled" with the notion that the December 8-9 transaction did not fit the legal definition of a conspiracy, especially once Attorney Mimms learned at the June 2006 meeting that the other individual mentioned in the discovery was not a participant in the transaction and instead only a convenience store clerk from whom Petitioner had asked directions on the way to the drug deal. (Id.). Attorney Mimms explained the apparent inconsistency between her statement at the hearing on the motion to withdraw that this meeting was the first time she learned there were no other non-government participants at the December 8-9 transaction with her earlier motion to suppress by stating that she had hoped to be able to "discount and dismiss" that person as a participant in the conspiracy at the suppression hearing. (Id. at 6).

Attorney Mimms also explained in the Supplemental Affidavit that she did not challenge the drug amount at the March 2007 sentencing hearing because she and Petitioner realized that a drug amount challenge was "futile" and "groundless" once they discovered the clear audio on the disk. (Id. at 7). They, instead, focused their sentencing strategy on qualifying for the safety valve, as this was the "most feasible way" to obtain a sentence below the 20-year mandatory minimum. (Id. at 7-8). Attorney Mimms relayed that if this Court had applied the safety valve, she intended to argue for a drug amount equivalent to what Petitioner had stated on the recording, rather than the amounts Dean discussed. (Id. at 8). But, when the Court denied the safety valve, Attorney Mimms believed that challenging the drug amount was "fruitless" as the statutory mandatory minimum, rather than the guidelines, controlled. (Id.). There was no way for Attorney Mimms to get under the statutory minimum, as Petitioner was on tape discussing at least five kilograms of cocaine, and this evidence, now that she had heard it, was "irrefutable." (Id.). Moreover, Attorney Mimms recognized that challenging the drug amount while also seeking the safety valve may have undermined their chances at obtaining relief under the safety valve. (Id.).

Finally, Attorney Mimms recounted the discovery she reviewed with Petitioner during his case, including law enforcement reports and a detailed accounting of the conversations between Petitioner and Dean. (Id. at 8-9). And, of course, Attorney Mimms and Petitioner reviewed the audio and video recordings of the December 8-9 drug transaction. (Id. at 9). Attorney Mimms estimated that she had approximately fifteen in-person conferences and nearly 30 telephone conferences with Petitioner, in addition to voicemail messages, written correspondence, and conferences with family members. (Id.).

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedinjgs provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter and the Government's Response, the Court finds that the argument presented by the Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

A. Ineffective Assistance of Counsel under Strickland v. Washington.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  See U.S. CONST. amend. VI.  To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).  Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"  Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice."  Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance

prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

B. Petitioner's Contention that He Received Ineffective Assistance of Counsel Because Attorney Mimms Failed to Object to the Drug Amounts Attributed to Petitioner.

Petitioner first contends that Attorney Mimms provided ineffective assistance of counsel by failing to object to the drug amount attributable to him. Petitioner cannot demonstrate that Attorney Mimms' decision not to challenge the drug amount was deficient or prejudicial. A review of the entire record, Attorney Mimms' affidavit, Petitioner's allocution at sentencing, and even the arguments made in his § 2255 motion make clear that Petitioner hinged his hopes of getting below the statutory minimum sentence on the application of the safety valve. To receive the benefit of the safety valve, Petitioner was required to "truthfully provide[] to the Government all information and evidence [he] has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." 18 U.S.C. § 3553(f). Attorney Mimms reasonably recognized that objecting to the drug amount may have jeopardized Petitioner's eligibility for the receiving benefit of the safety valve, as doing so would not amount to "truthfully provid[ing] to the Government all information and evidence [he] has concerning the offense . . . ."

Moreover, Attorney Mimms was aware by this point in the proceedings that Petitioner had been recorded discussing his past drug dealing with Dean. Even aside from the drug amounts Dean spoke of on the recording (approximately 30 kilograms), Petitioner himself spoke of dealing five kilograms of cocaine on the recording, and the Government brought out this fact at the second sentencing hearing. Because evidence of Petitioner's having dealt at least five kilograms of cocaine was so strong, Attorney Mimms' decision not to lodge a futile objection

24

was not deficient. Indulging the strong presumption that Attorney Mimms' performance was reasonable given the circumstances, including her knowledge of this Court, counsel for the Government, and the facts of the case, Petitioner cannot demonstrate that Attorney Mimms' decision not to challenge the drug amount and instead hinge their hopes on application of the safety valve was deficient. Here, Attorney Mimms correctly recognized that, without application of the safety valve, whether Petitioner was held responsible for dealing five kilograms or thirty, the statutory mandatory minimum controlled Petitioner's outcome. Thus, even if she had objected to the drug amount, this Court most likely would have overruled the objection, found at least five kilograms of cocaine attributable to Petitioner (as he stated on the recordings), and Petitioner's sentence would have been the same. In fact, objecting to the drug amount and requiring the Government to put on evidence of Petitioner's past drug dealing activities may have caused Petitioner's sentence to be higher. In sum, Petitioner has not demonstrated that Attorney Mimms acted deficiently or that he suffered any prejudice as a result of the failure to object to the drug amount.

C. Petitioner's Contention that He Received Ineffective Assistance of Counsel Because Attorney Mimms' Failed to Properly Investigate Petitioner's Case.

Petitioner also contends that was received ineffective assistance of counsel because Attorney Mimms failed to properly investigate his case, resulting in the motion to withdraw guilty plea. Here, even assuming that Mimms' performance was deficient, Petitioner has not shown a reasonable probability that his sentence would have been lower absent any deficient performance. "Strickland's objective reasonableness prong requires counsel to conduct appropriate factual and legal inquiries and to allow adequate time for trial preparation and development of defense strategies." Huffington v. Nuth, 140 F.3d 572, 580 (4th Cir. 1998)

(quoting <u>Sneed v. Smith</u>, 670 F.2d 1348, 1353 (4th Cir. 1983)).  Arguably, Attorney Mimms did

not meet this obligation by failing to recognize and understand the evidence against Petitioner

before she filed the motion to withdraw the guilty plea.  Attorney Mimms explained in her

affidavits that she had a good faith belief that the disks provided to her were too staticky to be

audible and that she believed this undermined the case against her client.  The Government has

conceded in its Response that this explanation is difficult to reconcile with the report prepared by

the case agent practically transcribing the substance of the conversations between Petitioner and

Dean, which Attorney Mimms stated in her Supplemental Affidavit that she reviewed.  The

Government has also conceded that Attorney Mimms' failure to fully comprehend the damaging

evidence against Petitioner was possibly what "troubl[ed]" the Fourth Circuit on direct appeal.

     Regardless, however, of Attorney Mimms' deficient performance, Petitioner cannot

demonstrate that he would have received a sentence below the statutory minimum sentence,

absent counsel's errors.  Although the Government objected to the PSR's recommendation to

apply the safety valve on the ground that Petitioner had moved to withdraw his guilty plea, and

the probation officer removed the safety valve on this basis, the Government's arguments at the

sentencing hearing and this Court's ultimate decision to deny the safety valve stemmed from

Petitioner's lack of disclosure, rather than from the motion to withdraw the guilty plea.[4]  The vast

majority of the second sentencing hearing was devoted to a discussion of Petitioner's lack of

disclosure to the Court as to his involvement in the drug conspiracy and the information that he

had as to other participants.   The Court itself explained that the denial of the safety valve was

due to Petitioner's lack of disclosure:

---

[4]  Furthermore, on direct appeal, the Fourth Circuit held that Court's finding regarding the safety
valve provision was not clearly erroneous.  <u>Herring</u>, 329 F. App'x at 432-33.

> The Court finds by a preponderance of the evidence that the defendant does not meet the criteria for safety valve or acceptance of responsibility. And that confidence level in that regard comes from the fact that the defendant's information has been sketchy, sparse, and to date he has not made a clear acceptance of the offense conduct and the relevant conduct that would inspire confidence.

(Doc. No. 50 at 39). Thus, it was not the motion to withdraw the guilty plea that caused this Court to deny the safety valve. Rather, it was Petitioner's lack of full disclosure regarding his wrongdoing.

In sum, even if Attorney Mimms had understood the strength of the evidence against Petitioner long before the week before the first sentencing hearing and had not filed the motion to withdraw the guilty plea, this Court would most likely have denied the safety valve for the same reason it did: Petitioner's lack of disclosure. In other words, Petitioner has simply not shown that, absent counsel's errors, there is a reasonable probability that he would have received a lower sentence. Because Petitioner cannot demonstrate <u>Strickland</u> prejudice based on Attorney Mimms' failure to adequately investigate Petitioner's case, his ineffective assistance of counsel claim fails.

## IV. CONCLUSION

For the reasons stated herein, the Court will dismiss the § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. §

2253(c)(2); <u>Miller–El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong)..

Signed: July 29, 2013

Richard L. Voorhees
United States District Judge